UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **DERRICK HERRING,** <br><br> Defendant. | **2:24-CR-20391-TGB-APP** <br><br> HON. TERRENCE G. BERG <br><br><br> **ORDER DENYING MOTION TO DISMISS** <br> **(ECF NO. 33)** |

Presently before the Court is Defendant Derrick Herring ("Herring")'s Motion to Dismiss Count I of his Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v). ECF No. 33. The Court held oral argument on Herring's motion on July 1, 2025.

For the reasons given on the record and further explained below, Defendant's Motion to Dismiss (ECF No. 33) will be **DENIED**.

**I. BACKGROUND**

According to the Government, in November 2023, as part of an investigation into Herring's alleged participation in a scheme to smuggle contraband into Michigan State Prisons, police officers executed a cellphone search warrant at Herring's house. *Response*, ECF No. 39, PageID.131–32. During the search, they found a gun in plain view. *Id*. After obtaining a second search warrant for firearms specifically, police officers found two boxes of ammunition for two different types of guns.

*Id*. Herring was indicted on July 23, 2024, for possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. Herring has been released on bond. ECF No. 8.

At the time of the search in November 2023, Herring was under federal supervised release after being convicted of a felony in 2014 for Conspiracy to Deliver Oxycodone. In that previous case, Herring had been supplying a co-conspirator with at least 500 oxycodone pills once a week for approximately sixteen weeks. He was sentenced to 168 months imprisonment and compassionately released after 6 years on November 24, 2020. *See* No. 14-cr-00008 (E.D. Ky.). Based on the search that resulted in the seizure of a firearm and ammunition, the Probation Department filed a Petition for Violation of Supervised Release Conditions on January 11, 2024. No. 21-cr-20128 (E.D. Mich.), ECF No. 6.

On June 21, 2024, Judge Edmunds held that Herring's possession of the gun found in his house violated his conditions of supervised release. *See* No. 21-cr-20128 (E.D. Mich.), ECF No. 23, PageID.78. Judge Edmunds also held that Herring violated his conditions based on his alleged involvement in the prison smuggling scheme—which has since been charged by state authorities and is currently pending in Branch County, Michigan. *Id*. at PageID.77. Herring is alleged to have been involved in a conspiracy to smuggle approximately $100,000 worth of contraband into Lakeland Correctional Facility in Coldwater, Michigan,

including marijuana, K2, cell phones, and prescription pills. *Id.* Finally, Judge Edmunds also found that Herring violated his conditions after he allegedly assaulted a Wendy's fast-food worker in June 2024. *Id.*; *see also Livonia Police Report*, ECF No. 39-1, PageID.146–52. As to this last incident, Herring later pleaded guilty to misdemeanor disorderly conduct for obstructing law enforcement and was sentenced to 30 days in jail. The remaining (and more serious) assault charges were dismissed. *16th District Court Case Docket*, ECF No. 39-2, PageID.153–73.

In addition to the violations found by Judge Edmunds, the record includes evidence showing that Herring has had additional arrests—though dismissed, not charged, or not prosecuted—for assaultive behaviors while on federal supervised release, including one for simple assault/battery of a Walmart employee and another for obstructing police in October 2021 as well as a misdemeanor assault in May 2022. *Dearborn Police Report*, ECF No. 39-4, PageID.185–91; *Criminal History Report*, ECF No. 39-3, PageID.175, 178.

Moreover, Herring's criminal record also includes older felony convictions for possession with intent to deliver marijuana and controlled substances possession of marijuana (2007) as well as attempted carrying of a concealed weapon (2008). *Criminal History Report*, ECF No. 39-3, PageID.179–80.

3

## II. LEGAL STANDARD

### A. Dismissal of a Defective Indictment

A defendant may seek dismissal of a defective indictment in a pretrial motion under Federal Rule of Criminal Procedure 12(b)(3)(B).

### B. Second Amendment and Felon-In-Possession Laws

The Second Amendment provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. For the first two centuries after its adoption, the Second Amendment was generally understood to concern the maintenance and preservation of a militia for the common defense of the people. *See, e.g.*, *United States v. Miller*, 307 U.S. 174, 178–79 (1939).

In *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), the Supreme Court for the first time interpreted the Amendment to find in it an "inherent" right of every law-abiding American citizen to bear arms in defense of *self*. But it cautioned that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and expressly noted that "longstanding prohibitions on the possession of firearms by felons" were "presumptively lawful." *Id.* at 626–27. While *Heller* did not articulate a framework for courts to apply in considering challenges to the constitutionality of regulations implicating the Second Amendment, the Supreme Court did so in *New York State Rifle & Pistol Association v.*

4

*Bruen*, 597 U.S. 1, 24 (2022). That framework has two steps. First, a court must evaluate whether the government can rebut the presumption that the Second Amendment protects the challenged gun-possession conduct. *Id.* Second, the court must evaluate whether the government can justify the challenged regulation by demonstrating that it is "consistent with the Nation's historical tradition of firearm regulation." *Id.*

In its most recent Second Amendment case, *United States v. Rahimi*, 144 S. Ct. 1889, 1901–02 (June 21, 2024), the Supreme Court again reiterated *Heller*'s admonition that prohibitions "on the possession of firearms by 'felons and the mentally ill' are 'presumptively lawful'" and explained they were consistent with founding-era regimes that disarmed individuals who posed a "clear threat of physical violence" to others. Recently, under *Bruen*'s framework, the Sixth Circuit held that felons are among "the people" protected by the Second Amendment and concluded that § 922(g)(1)'s ban on felons possessing firearms was facially consistent with the Second Amendment. *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. Aug. 23, 2024). After exploring the history of gun regulation, the Sixth Circuit found that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous," *id.* at 657, and that § 922(g)(1) "is constitutional on its face and as applied to dangerous people," *id.* at 662–63. The Sixth Circuit later confirmed the constitutionality of temporary firearm possession limitations as applied to individuals on parole, probation, or

5

supervised release too. *See United States v. Goins*, 118 F.4th 794, 802 (6th Cir. 2024 Oct. 8, 2024).

The district court makes the determination as to whether the defendant's background and prior convictions show that he is dangerous so that the general rule prohibiting felons from possessing firearms may be constitutionally applied to a particular defendant. The defendant bears the burden to show he is not dangerous and thus falls outside of § 992(g)(1)'s constitutionally permissible scope. *Williams*, 113 F.4th at 662. The dangerousness determination is "fact-specific, depending on the unique circumstances of the individual defendant," including the person's "entire criminal record," such as any evidence of past convictions in the record. *Id.* at 659–60.

The Sixth Circuit, in particular, recognized that "certain categories of *past convictions* are highly probative of dangerousness, while others are less so," and described a three-tiered analytical framework for evaluating the dangerousness of prior convictions. *Id.* at 658 (emphasis added). While courts need not find a "categorical match to a specific common-law crime" to establish that an individual is dangerous, the *Williams* court identified three broad categories of crimes: (1) crimes against the person—which would include violent crimes such as murder, rape, assault, and robbery; (2) crimes that pose a significant threat of danger to others, such as drug trafficking and burglary, where the nature of the crimes create the possibility of a violent confrontation; and, (3)

6

crimes like mail fraud and making false statements, which "cause no physical harm to another person or the community." *Id.* at 658–59. As to the first two types of crime, the Sixth Circuit explained that "[a]n individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous," *id.* at 663, while the kinds of crimes falling into the third category do not necessarily "make a person dangerous." *Id.* at 659.[1]

The above analysis suggests that if a defendant charged with § 922(g)(1) has a prior felony conviction that fits in the first two categories, a court would be justified in finding that he was dangerous and therefore would be prohibited from possessing a firearm. But to say that is not to say that felons who committed crimes less clearly violent or likely to result in danger to others are automatically to be considered "non-dangerous." Indeed, the Sixth Circuit made it clear that,

> When evaluating dangerousness, a court may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction. . . . Courts may consider any evidence of past convictions in the record, as well as other judicially noticeable information—such as past convictions—when assessing a defendant's dangerousness.

---

[1] "Although the *Williams* court at times put the analysis in terms of 'dangerous persons' and whether a person 'is dangerous,' the analytical framework only asks about the dangerousness of their conduct which resulted in a felony conviction" or "whether a defendant's past convictions are dangerous." *United States v. Brown*, No. 24-20227, 2024 WL 5161946, at *4 (E.D. Mich. Dec. 18, 2024)(Behm, J.) (citing *Williams*, 113 F.4th at 660, 662).

7

*Id.* at 659–60. Judicially noticeable facts are facts "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Sixth Circuit noted that prior convictions can be accepted "without an evidentiary hearing or jury fact finding" and that a presentence report whose contents have not been objected to can also be so considered. *Williams*, 113 F.4th at 662 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228–39 (1998)). It recognized "courts may wish to consider information beyond criminal convictions," such as a civil restraining order, but left open the question of what information is "relevant." *Id.* at 659 n.12.

### III. DISCUSSION

Herring makes two arguments in support of his motion to dismiss. First, and not surprisingly, Herring argues that although a felon he is not a "dangerous person" and that consequently § 922(g)(1)'s prohibition of firearms possession is unconstitutional as applied to him. More creatively, Herring also argues that the Sixth Circuit's interpretation of § 922(g)(1) is unconstitutionally vague and overbroad such that it should not be followed by this Court.

#### A. As-Applied Challenge

The Court may consider the defendant's "entire criminal record" when determining dangerousness in connection with an as-applied challenge to § 922(g)(1). *Williams*, 113 F.4th at 659. Herring's criminal

8

record includes 2014 felony conviction for Conspiracy to Distribute Oxycodone, three additional 2007 and 2008 drug- and firearms-related felonies, a recent misdemeanor for disorderly conduct in 2024, a few arrests for assaultive behaviors since his release from prison in 2020 which were not prosecuted, and a pending state court charge for his alleged involvement in a prison smuggling scheme. Defendant argues his prior convictions are insufficient to support a finding that he is "dangerous," and the Government claims Herring has failed to meet his burden to prove he is not dangerous.

*First*, the Government argues Herring's prior drug-related felonies support a finding of dangerousness because these convictions fall in the second category of crimes identified by *Williams* that can "justify a finding of danger," such as drug trafficking, because they "pose a significant threat of danger" to the community in itself and "often lead[ ] to violence." *Williams*, 113 F.4th at 659.

However, these prior convictions occurred some time ago: three of them occurred in 2007 and 2008 and the most recent one occurred more than ten years ago. As Herring indicates, *Williams* provides no specific guidance as to whether, in making the dangerousness decision, district courts should give less weight to convictions for violent crimes which occurred long ago. Common sense, however, strongly suggests they should be given less weight. *United States v. Jennings*, No. 24-CR-20173, 2024 WL 4560602, at *6 n.2 (E.D. Mich. Oct. 24, 2024); *see also United*

9

*States v. Green*, No. 23-CR-20506, 2024 WL 4469090, at *3 (E.D. Mich. Oct. 10, 2024)(Behm, J.) (noting that the age of a 13-year-old conviction suggested it should not be weighed heavily).

Notwithstanding Herring's prior convictions in 2007 and 2008—which the Court does not assign much weight in determining dangerousness given their age—Herring's latest drug-related felony conviction, though ten years old, was for a very serious drug trafficking offense, for which he received a sentence of 14 years' imprisonment. As to this conviction, for which Herring was still on supervised release when charged with this offense, it deserves considerable weight despite its age.

*Second*, as the Government points out, Herring has not proven himself to be a model citizen since his compassionate release six years into his prison sentence for this ten-year-old conviction. For instance, he is currently facing charges for smuggling contraband into prison, including controlled substances, in state court. *See Goins*, 118 F.4th at 804 (citing to defendant's five charges for driving under the influence to reject his as-applied challenge).

But most importantly, Herring was still on supervised release for the 2014 conviction at the time of the instant offense. While Herring claims that "the factual underpinnings of this case do not raise questions about whether [ ] Herring menaced anyone," the Government alleges that the circumstances of the instant offense further support a finding of dangerousness as he was found to possess a firearm and multiple types

10

of ammunition *while on federal supervised release.* While the Sixth Circuit has at times declined to consider evidence that the present charge would lend to a showing of dangerousness,[2] it has deemed it appropriate to consider, at the very least, the fact that the possession of the gun at issue violated a defendant's *probation terms. See Goins*, 118 F.4th at 804 ("[M]ost importantly, at the time Goins possessed the firearm in 2021, he was in violation of a condition of his four-year state probation term."). Here, Judge Edmunds found that Herring's possession of the gun at issue in this case violated his federal supervised release terms. *See* No. 21-cr-20128 (E.D. Mich.), ECF No. 23, PageID.78.

The Sixth Circuit reasoned that violation of such a probation condition suggests an individual is more likely to recidivate and violate the law, which supports a finding of dangerousness if "repeated and recent actions [also] show a likelihood of future dangerous conduct." *See Goins*, 118 F.4th at 798. On that point, the Government highlights Herring's alleged pattern of assaultive behavior since being released from prison and while under federal supervision. In June 2024, based on the police reports, it appears Herring lost his temper at Wendy's, threw something at an employee, and resisted police officers. Herring was convicted after a guilty plea of disorderly conduct only, not the more

---

[2] *See United States v. Vaughn*, 2024 WL 4615853, at *2 n.2 (6th Cir. Oct. 30, 2024) (defendant's prior "criminal convictions [were] sufficient to resolve this case").

serious assault charge. The Government also points to additional arrests for assaultive behavior in 2021 against a Walmart employee and 2022 in an alleged domestic incident. While these incidents did not lead to convictions, and therefore do not deserve as much weight, taken together, and under the totality of the circumstances, the pattern of assaultive behavior militates in favor of a finding of dangerousness for the purposes of § 922(g)(1). *See Goins*, 118 F.4th at 804 (rejecting defendant's as-applied challenge where the defendant had been charged five times for driving under the influence, convicted of four DUI offenses, caused a motor vehicle accident, was twice convicted of public intoxication and driving on a suspended license, and violated a condition of his four-year state probation term by possessing a firearm). Thus, Herring's prior conviction for drug trafficking, his arrests for assaultive behaviors in 2021, 2022, and 2024 since his release from prison, as well as the supervised release violation for possessing a firearm demonstrate a history of dangerous conduct, when taken together.

### B. Facial Challenge

Herring also makes multiple facial challenges to § 922(g)(1), namely that the Sixth Circuit's interpretation of the statute in *Williams* renders the statute overbroad and void for vagueness such that this Court should not follow *Williams*. ECF No. 33, PageID.101—13.

More specifically, Herring argues the *Williams* panel erred in its historical analysis when it established broad principles not based on

"relevantly similar" founding-era laws in contravention of *United States v. Rahimi*, 602 U.S. 680 (2024). For instance, Herring claims the panel relied on examples of collective rebellion to support disarmament of individual felons. He also claims the historical examples support disarmament, not automatic incarceration, for possession of a firearm. He argues that is because disarmament was not necessarily intended as punishment, while that is one of the primary purposes of incarceration. Further, the Court in *Rahimi* focused on laws targeting the misuse of firearms, not merely the possession of firearms.

Herring also claims the *Williams* test is both over- and under-inclusive because not all felons are "dangerous" and not all "dangerous" people are felons. He argues the Sixth Circuit's reliance on undefined notions of "dangerousness" is just as vague and unworkable as the government's reliance on notions of being "responsible" which was flatly rejected by the *Rahimi* Court.

And he alleges the *Williams*' "dangerousness" test improperly places the burden on a defendant to show their non-dangerousness without pointing to any historical support, which also forces a defendant to prove facts underlying an element of the crime (dangerousness), in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Herring concludes that the "only constitutionally permissible mechanism is to rely upon the categorical approach and to count only prior convictions that have as an element the 'use or threatened use of physical violence

13

against the person of another'—or some other carefully distilled definition of sufficiently dangerous crimes." ECF No. 33, PageID.113.

The problems with Herring's facial challenges are two-fold. First, the Sixth Circuit has already concluded § 922(g)(1) was not susceptible to a facial challenge because "most applications of § 922(g)(1) are constitutional" such that a defendant could not demonstrate that "no set of circumstances exists under which the Act would be valid." *Williams*, 113 F.4th at 643, 657. Second, because Herring's facial challenge focuses on claims that the *Williams rule itself* is overbroad and void for vagueness, as opposed to the statute, this argument fails as well. Vagueness and overbreadth doctrines apply to criminal statutes—where a law's constitutionality may be challenged if it is so vague that its scope cannot be understood by the average citizen or invites arbitrary and discriminatory enforcement, *Johnson v. United States*, 576 U.S. 591, 595 (2015), or it over-burdens innocent conduct protected by the First Amendment, *City of Chicago v. Morales*, 527 U.S. 41, 57 (1999)—but the doctrines are not usually invoked to challenge a rule of interpretation pronounced by a court. *See United States v. Lopez*, 929 F.3d 783, 785 (6th Cir. 2019) ("[T]he void-for-vagueness doctrine [ ] focuses on the actions of Congress, not the other branches.").

This Court is bound by the Sixth Circuit's interpretation of the Second Amendment which requires that such challenges be adjudicated under *Williams*, unless the Sixth Circuit or the Supreme Court alters

14

that interpretation. *See United States v. Sutton*, 2024 WL 4817441, at *5 (S.D. Ohio Nov. 18, 2024) (citing *United States v. Thomas-Mathews*, 81 F.4th 530, 540 n.3 (6th Cir. 2023). The Court declines Herring's invitation to declare that the Sixth Circuit's decision itself is somehow inconsistent with the Constitution—even though other circuits might agree it is. *See Kimble v. Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015) ("[A]n argument that we got something wrong—even a good argument to that effect—cannot by itself justify scrapping settled precedent."); *see also Zherka v. Bondi*, 140 F.4th 68, 91 (2d Cir. June 9, 2025) ("[T]he Sixth Circuit's analysis [is] flawed for several reasons.").

Furthermore, even if *Williams* were overruled, Herring's facial and as-applied challenge would likely fail under the approach followed by at least six other circuits. *See, e.g., Zherka*, 140 F.4th at 93 ("[W]e conclude that the Second Amendment does not bar Congress from passing laws that disarm convicted felons, regardless of whether the crime of conviction is nonviolent"); *United States v. Hunt*, 123 F.4th 697, 706 (4th Cir. Dec. 18, 2024) (noting that "past conduct (like committing a felony) can warrant keeping firearms away from persons 'who might be expected to misuse them'") (citation omitted); *United States v. Jackson*, 110 F.4th 1120, 1127 (8th Cir. Aug. 8, 2024) (explaining that "history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society"); *United States v. Duarte*, 137 F.4th 743, 748 (9th Cir. 2025) (holding that "§ 922(g)(1) is

not unconstitutional as applied to non-violent felons"); *Vincent v. Bondi*, 127 F.4th 1263, 1266 (10th Cir. 2025) ("[T]he Second Amendment doesn't prevent application of § 922(g)(1) to nonviolent offenders."); *United States v. Dubois*, 139 F.4th 887, 889 (11th Cir. June 2, 2025) ("Rahimi—like [Bruen]—did not abrogate our holding in *Rozier* that section 922(g)(1) is constitutional under the Second Amendment.").[3]

## IV. CONCLUSION

For the aforementioned reasons, Herring's Motion to Dismiss (ECF No. 33) is **DENIED**.

**SO ORDERED**.

Dated: July 25, 2025                    /s/ Terrence G. Berg
                                        TERRENCE G. BERG
                                        United States District Judge

---

[3] *But see Range v. Att'y Gen. United States*, 124 F.4th 218, 222 (3d Cir. 2024) (holding that § 922(g)(1) was unconstitutional as applied to a non-violent felon); *United States v. Diaz*, 116 F.4th 458, 471 (5th Cir. 2024) (rejecting an as-applied challenge because the defendant's underlying felony was sufficiently similar to a death-eligible felony at the founding); *United States v. Carbajal-Flores*, No. 24-1534, --- F.4th ---, 2025 WL 1948914, at *9 (7th Cir. July 16, 2025) ("[T]he class of persons disarmed under § 922(g)(1) is potentially overinclusive: The historical justification for disarming some felons may not support disarming all felons."); *United States v. Langston*, 110 F.4th 408, 420 (1st Cir. Aug. 2, 2024), *cert. denied*, 145 S. Ct. 581 (2024) (declining to address constitutional challenge to § 922(g)(1) in the merits, instead rejecting as-applied challenge because there was no "plain error").